UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GINA ORELLANA, INDIVIDUALLY AND ON BEHALF OF THE MINOR CHILD A.L. | CIVIL ACTION |
| VERSUS | NO: 18-11673 |
| TERREBONNE PARISH CONSOLIDATED GOVERNMENT ET AL. | SECTION: "H"(1) |

## ORDER AND REASONS

Before the Court are Defendants Terrebonne Parish Consolidated Government, Derek Schlesinger, and Michael Scott's Motions to Dismiss the First and Second Amended Complaints (Docs. 46, 57). For the following reasons, the Motions are **GRANTED IN PART**.

## BACKGROUND

This case arises out of the December 1, 2017 seizure of A.L., an-eight-year-old child with special needs, by Defendants Derek Schlesinger and Michael Scott, police officers in Terrebonne Parish. On that day, Plaintiff A.L. arrived at school upset and with scratches on her arm and neck. A.L.'s teacher noticed the scratches and sent A.L. to the guidance counselor, Misty Robichaux. Robichaux sent A.L. to the school nurse who noted that A.L. had an inch-long scratch on the back of her neck that was not bleeding and a half-inch scratch on the right side of her neck that was bleeding. The nurse also noted a finger nail mark on A.L.'s right forearm. When Robichaux asked how

A.L. got these scratches, A.L. said that her mother had gotten mad at her and grabbed her. Robichaux then called the Houma Police Department.

The department dispatched Schlesinger to the school. Schlesinger spoke with A.L., and A.L. told him what had occurred at home prior to arriving at school. She stated that her mother had asked her to clean her room, that she had started to cry, and that her mother had grabbed her arm while they were outside waiting for the bus. Schlesinger sent A.L. back to class and went to question her mother, Plaintiff Gina Orellana. Schlesinger questioned Orellana and asked why A.L. had scratches on her body. Orellana had the same explanation as A.L. Orellana explained that she may have accidentally scratched A.L. when she grabbed her as she tried to run back to the house while waiting for the school bus. Schlesinger told Orellana that her story matched A.L.'s and that she may be visited by the Louisiana Department of Child and Family Services. Schlesinger did not inform Orellana that he intended to take A.L. into custody.

Schlesinger returned to the school to pick up A.L. and bring her to the Houma Police Station. A.L. was scared and repeatedly requested to speak with one of her family members. Schlesinger refused the requests and took A.L. to the Houma Police Station. Notably, Schlesinger did not get a court order to remove A.L. from school. Schlesinger then turned A.L. over to the custody of Defendant Scott.

Scott questioned A.L. and then brought her to the Children's Advocacy Center where she was interviewed for a third time. At the end of the interview, Scott concluded that the scratches were accidental. Scott and another officer then brought A.L. home.

Plaintiffs claim that as a result of the incident, A.L. suffers from Post-Traumatic Stress Disorder. Plaintiffs brought a § 1983 action for violations of

their Fourth and Fourteenth Amendment rights against Schlesinger and Scott, as well as a failure to train claim under § 1983 against Terrebonne Parish Consolidated Government. Plaintiffs also brought state law causes of action for false arrest and negligence against Schlesinger and Scott.

In this motion, Defendants contend that Plaintiffs cannot succeed on their claims under 42 U.S.C. § 1983 or state law and that they are entitled to qualified immunity from Plaintiffs' claims. Defendants filed their first motion to dismiss on these grounds on April 16, 2019. Plaintiffs subsequently amended their Complaint, and Defendants' motion was denied as moot.[1] On July 3, 2019, Defendants filed a motion to dismiss Plaintiffs' First Amended Complaint on qualified immunity grounds.[2] Thereafter, Plaintiffs filed a Second Amended Complaint for the sole purpose of properly naming one of the Defendants.[3] Defendants then moved to dismiss Plaintiffs' Second Amended Complaint, adopting its earlier arguments in full.[4]

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim for relief that is plausible on its face."[5] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[7] The Court need not,

---

[1] Docs. 40, 41.
[2] Doc. 46.
[3] Doc. 56.
[4] Doc. 57.
[5] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[6] *Id.* (citing *Twombly*, 550 U.S. at 556).
[7] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

however, accept as true legal conclusions couched as factual allegations.[8] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[9] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[10]

## LAW AND ANALYSIS

### A. Consideration of Evidence

At the outset, the Court must determine what evidence it will consider in resolution of these Motions. Defendants have attached two police reports to their Motions to Dismiss. Generally under rule 12(b)(6), when considering a motion to dismiss, "a district court must limit itself to the contents of the pleadings, including attachments thereto."[11] However, the court may consider the attachments to a motion to dismiss as part of the pleading "if they are referred to in the plaintiff's complaint and are central to her claim."[12] "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims."[13] If the document is merely evidence of an element of a plaintiff's claim, the court may not consider the document as part of the pleading.[14]

Here, the police reports are not central to the Plaintiffs' claims because they are not necessary to establish an element of any claim. The first police

---

[8] *Iqbal*, 556 U.S. at 667.
[9] *Id.*
[10] *Lormand*, 565 F.3d 228 at 255–57.
[11] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[12] *Id.* at 499.
[13] Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 661–62 (N.D. Tex. 2011).
[14] *See id.* at 662; *see also* Scanlan v. Texas A&M Univ., 343 F.3d 533, 537 (5th Cir. 2003).

4

report is an account of what transpired during Schlesinger's and Scott's investigation of A.L.'s alleged child abuse incident. The second police report is an account of a second alleged child abuse incident months after the controversy in question. The police reports are not necessary to prove that there was a violation of Plaintiffs' Fourth or Fourteenth Amendment rights. Although Plaintiffs may have referred to the contents of the first police report in their pleading, it is merely evidence of Plaintiffs' claims. The second police report is not even referenced by Plaintiffs. Because the police reports are not central to Plaintiffs' claims, this Court will not consider them in resolution of Defendants' Motions to Dismiss.

**B. Qualified Immunity**

Defendants contend that Plaintiffs' § 1983 claims should be dismissed because they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[15] "There are generally two steps in a qualified immunity analysis."[16] "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a [statutory or] constitutional right. Second . . . the court must decide whether the right at issue was clearly established at time of [the] defendant's alleged misconduct."[17] Courts need not address the first step before the second step; the two issues may be analyzed in any order.[18]

"To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [each defendant] violated clearly

---

[15] Heaney v. Roberts, 846 F.3d 795, 801 (5th Cir. 2017) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).
[16] *Id.* (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).
[17] *Id.* (citing *Pearson*, 555 U.S. at 232) (internal quotations omitted).
[18] *Id.* (citing *Pearson*, 555 U.S. at 242).

5

established statutory or constitutional rights."[19] "Heightened pleading demands more than bald allegations and conclusionary statements."[20] Instead, the plaintiff "must allege facts specifically focusing on the conduct of [each defendant] which caused [plaintiff's] injury."[21]

### 1. *Defendant Derek Schlesinger*

Plaintiff, on behalf of her minor daughter A.L., claims that A.L.'s Fourth Amendment rights were violated when Schlesinger seized and removed her from school. Plaintiff also claims that A.L's removal violated her Fourteenth Amendment Due Process rights. In this particular case, the test for a violation of a Fourth Amendment right is essentially the same as the test for a violation of a Fourteenth Amendment right.[22]

"There is a clearly established right to be free from unreasonable seizures under the Fourth Amendment."[23] Nevertheless, a "seizure" must in fact occur for a violation to exist.[24] "A person is 'seized' for Fourth Amendment purposes 'when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen.'"[25] "A seizure occurs 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave.'"[26] The facts of the Complaint easily establish that A.L. was seized by Schlesinger when she was

---

[19] Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 995 (5th Cir. 1995).
[20] *Id.*
[21] *Id.*
[22] Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 434–35 (5th Cir. 2008). ("The procedures required for a constitutional search and seizure under the Fourth Amendment are adequate to protect Gary and Melissa's procedural due process rights and liberty interest in directing the upbringing of their children.").
[23] *Heaney*, 846 F.3d at 801 (citing Michigan v. Summers, 452 U.S. 692, 696 (1981)); *see* U.S. CONST. AMEND. IV.
[24] *See* Terry v. Ohio, 392 U.S. 1, 16 (1968).
[25] McLin v. Ard, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *Terry*, 392 U.S. at 19 n.16).
[26] *Id.* (quoting Michigan v. Chesternut, 486 U.S. 567, 573 (1988)).

removed involuntarily from school and taken to the police department over her protestations.

Plaintiffs argue that the seizure of A.L. was unreasonable based on the standard set forth by the Fifth Circuit in *Gates v. Tex. Department of Protective & Regulatory Services*.[27] In *Gates*, the Fifth Circuit considered the constitutional standard for removing a child from school for the purpose of conducting a child abuse investigation.[28] The court held that to remove a child from school without a court order, "the social worker must have a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day."[29] In developing this standard, the court noted that "students have a lesser expectation of privacy" because their "freedoms have already been limited."[30] In addition, seizures for the purpose of investigating child abuse are for the child's own protection.[31]

The court held that the officer's reasonable belief should be based on a totality of circumstances considering all facts of which the officer is aware.[32]

> [F]actors the court might consider are the nature of the abuse (its severity, duration, and frequency), the strength of the evidence supporting the allegations of abuse, the risk that the parent will flee with the child, the possibility of less extreme solutions to the problem, and any harm to the child that might result from the removal.[33]

In *Gates*, the court found that the removal of two children was an unreasonable seizure in violation of the Fourth Amendment because it was based solely on an anonymous tip and was not corroborated by first-hand observations.[34]

---

[27] *Gates*, 537 F.3d at 433.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 432.
[31] *Id.*
[32] *Id.* at 433.
[33] *Id.* at 429.
[34] *Id.* at 433–34.

7

The Complaint alleges that Schlesinger was called to the school to investigate a possible allegation of child abuse. Schlesinger personally observed the minor scratches on A.L.'s neck and arm. He then spoke to both A.L. and her mother regarding the incident. Their accounts of what had occurred matched and suggested that it was an accident. Further, there is no indication that there had been previous instances of possible child abuse involving A.L. The facts of the Complaint suggest then that it was unreasonable for Schlesinger to believe that A.L. was being abused or that she would be abused upon returning home. Without a reasonable belief of future harm, Schlesinger's removal of A.L. from school was a violation of A.L.'s Fourth Amendment right. Further, the *Gates* standard for the removal of children from school has been clearly established for almost a decade.[35] Accordingly, Schlesinger is not entitled to qualified immunity at this stage.

### 2. *Defendant Michael Scott*

Plaintiffs likewise claim that Defendant Michael Scott violated their Fourth and Fourteenth Amendment rights. Scott argues that he is entitled to qualified immunity under the same reasoning as Schlesinger. Plaintiffs allege that Scott's seizure of A.L. was unreasonable in light of the clearly established *Gates* standard.

This Court finds, however, that the *Gates* standard does not apply to Scott. The *Gates* standard establishes when an officer violates a Fourth or Fourteenth Amendment right by removing a child from school without a court order. Scott did not remove A.L. from school. Scott's first interaction with A.L was at the Houma Police Department after A.L. had already been removed from school. Without a removal, the *Gates* standard does not apply. Because Plaintiffs only allege a violation of their Fourth and Fourteenth Amendment

---

[35] *See* Romero v. Brown, 937 F.3d 514, 523 (5th Cir. 2019).

8

rights via the *Gates* standard, and the *Gates* standard does not apply, the Plaintiffs have failed to establish that Scott violated Plaintiffs' Fourth and Fourteenth Amendment rights. Accordingly, Scott is entitled to qualified immunity.

### C. Failure to Train

Plaintiffs next claim that Terrebonne Parish Consolidated Government (TPCG) is liable for its failure to properly train its officers on the circumstances under which children can lawfully be seized from school. To succeed on a failure-to-train § 1983 claim, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[36] Further, the plaintiff must show defendant's deliberate indifference through a pattern or policy of similar constitutional violations.[37] Plaintiffs have not alleged facts suggesting that TPCG has a policy or pattern of violating the *Gates* standard. Accordingly, Plaintiffs have not sufficiently alleged a § 1983 failure to train claim against Defendant TPCG, and it is therefore dismissed without prejudice. Plaintiffs may amend their Complaint to the extent that they can properly allege this claim.

### D. State Law Claims

Finally, Plaintiffs assert state law claims for false arrest and negligence against Defendants. Defendants claims that they are statutorily immune from liability under state law. Louisiana Children's Code article 514 provides that, except when acting with gross negligence or in bad faith,

> [i]n the consideration of any child abuse case, a member of a multidisciplinary team shall not be liable for civil damages while

---

[36] Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).
[37] Connick v. Thompson, 563 U.S. 51, 62 (2011).

> acting in the official scope of his duties if the member, in good faith, refers a report of alleged child abuse for investigation, conducts an investigation, makes an investigative judgment or disposition, or releases or uses information for the purpose of protecting a child.

By its plain language, this statute seems to give Defendants Scott and Schlesinger immunity for their investigation into the child abuse allegations at issue here. Plaintiffs offer no argument why this immunity does not apply. Accordingly, Defendants Scott and Schlesinger are immune from Plaintiffs' state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motions are **GRANTED IN PART**. Plaintiffs' claims against Defendant Michael Scott are **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claims against Defendant Derek Schlesinger are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against Terrebonne Parish Consolidated Government are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may amend their Complaint within 20 days of this Order to the extent that they can properly alleged a failure to train claim.

New Orleans, Louisiana this 14th day of November, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**